St. Louis Southwestern Railway Company v. J. A. Kelton.

Decided February 14, 1902.

1.—Personal Injury—Railroad Engineer—Verdict Not Excessive.

A verdict for $13,500 in favor of a railroad engineer for personal injuries held not excessive in a case where such engineer was earning $135 per month, was 45 years old, and the injury caused great suffering and permanently incapacitated him from following his vocation or any active employment.

2.—Same—Pleading and Proof—Allegation of Injuries.

Where plaintiff's petition alleged that he was caught and crushed in the wreck, and his leg crushed and dislocated, the pleading was sufficient to support evidence, admitted without objection, showing an injury to the hip.

3.—Railway Company—Negligence—Assumed Risk.

Where the injuries to plaintiff, a locomotive engineer, resulted from a collision of trains caused by the negligence of a brakeman of the other train in leaving open a switch which it was his duty to set, the doctrine of assumed risk did not apply in the case because there was evidence tending to show that the brakeman's negligence was due to his being much in need of sleep, and that plaintiff knew the railway company sometimes sent out on duty brakemen who needed sleep.

4.—Same—Evidence of Negligence.

It was proper to show that the brakeman was in need of sleep by the evidence of a witness that she saw him just before he started out on his trip, and that "he looked bad and worried, and it seemed it was all he could do to walk;" and also that the condition of the brakeman was known to the train dispatcher who was charged with the duty of sending out the crews.

5.—Same—Fellow-Servants.

The doctrine of fellow-servants has no application in this case, and the brakeman was the agent of the company to see that the switch was closed.

Appeal from Smith. Tried below before Hon. J. G. Russell.

*E. B. Perkins* and *Marsh, McIlwaine & Butler,* for appellant.

*Johnson & Edwards,* for appellee.

GARRETT, Chief Justice.—The appellee brought this suit against the appellant to recover damages for injuries received by him in a collision on appellant's railroad. On September 7, 1900, while the appellee

was in the employment of the appellant as a locomotive engineer on one of its passenger trains, a switch was left open through the negligence of a brakeman, also in the employ of the appellant, and a train which appellee was in charge of ran into the switch and collided with the head of a freight train, which had been side-tracked for the purpose of letting the passenger train pass, and received the injuries complained of. The brakeman belonged to the crew in charge of the freight train and was charged with the duty of opening and closing the switch and seeing that it was properly set. The appellee was injured through the negligence of the appellant, without fault on his part. His injuries were very severe and he suffered greatly. He sustained damages to the extent of $13,500, the amount of the judgment rendered by the court below upon the verdict of a jury.

By the third, fourth, and fifth assignments of error the amount of the verdict is complained of as excessive. Appellee was a locomotive engineer and had been following that vocation on appellant's line of railway for fifteen years. He was 45 years of age at the time he received the injuries, and was strong and in good health, and was earning $135 a month. His face, hands, and legs were scalded and burned by the escaping steam. His left foot was crushed and he has lost two of his toes and the free use of his foot. His left arm is dislocated at the shoulder; and he is permanently incapacitated from following his avocation as locomotive engineer. He received injuries in his hip and back, and suffered greatly from the burning and scalding of his face, hands, leg, and foot. The skin peeled off his face and hands, and slipped off his leg, and the flesh slipped off from his foot. He limps in walking and can not walk much without his ankle paining him. His shoulder has shrunk and his arm has no strength in it and is of but little use to him. His eyesight also is injured, and he suffers pain in his hip during cloudy weather. He knows no other business than railroading, and there is nothing in that line that he can do now. We do not think that the verdict should be disturbed.

The first and second assignments of error raise the question of the sufficiency of the pleadings to recover for injuries to the hip. Evidence was received without objection that appellee's hip was hurt and pained him, and the court charged the jury, as set out in the first assignment, upon the measure of damages, that they might take into consideration any pain and suffering sustained as the direct result of the injuries; and the appellant, as appears from the second assignment, requested the court to instruct the jury, in the event they should find for the appellee, not to allow him anything for the injury, if any, to his hip. It is contended that there is no allegation in the petition that would sustain a recovery for injury to the hip. The allegations in the petition were that "there was a violent collision of said trains, and by reason thereof plaintiff was violently thrown and hurled against the said engine and parts of said machinery, and against said wreck and tender and the ground, and plaintiff was caught and crushed in said wreck and his  *  *  *  leg was

crushed and mangled, and the same dislocated; that plaintiff's back and side were wrenched, bruised, and injured; that the hot water and steam escaping from the engine severely scalded and burned plaintiff's * * * legs * * * and body; that plaintiff's * * * leg still remains mashed and broken, crushed, stiff and deformed, and by reason thereof plaintiff is unable to use said * * * leg * * * and will never have the use of same; that plaintiff is rendered a cripple for life on account of said injuries, and the same are permanent; that the said injuries to plaintiff's back and side are severe and permanent; and by reason of the said scalds and burns the skin and flesh of plaintiff peeled off and sloughed away; that by reason of said injuries plaintiff has suffered, still suffers, and will ever suffer great physical and mental pain and torture, and plaintiff is and will ever be wholly incapacitated and prevented from performing manual labor, or to follow his occupation, and he is now and will always be a cripple, and is and will always be wholly incapacitated from earning a livelihood."

In the case of Railway v. Bibolet, 57 S. W. Reporter, 974, this court held that the allegation that the appellee's "body was bruised and battered," in the absence of a special exception, was suffcient to admit proof of an injury to the arm, although there were allegations in the petition of specific injuries. An application for writ of error was refused by the supreme court, and we think the case decisive of the question here presented. We are also of the opinion that the averment that the leg was crushed and dislocated would admit of proof of injury to the hip, as the wresting of the ball at the end of the thigh bone from the hip socket would naturally involve the hip and cause injury to it. We do not think that the charge authorizes the recovery of double damages or that it assumes that the appellant's servants were negligent. The charge in question is a fair presentation of the measure of damages and is confined to the issues of the case.

The evidence showed that the act of the brakeman in leaving the switch open was probably the result of his being in need of rest and falling asleep at the time he started out on the trip on which the collision occurred, and the appellant requested the court to instruct the jury that although they should believe such to be the case and should further believe that the appellant was guilty of negligence in sending him out in that condition, still if they should believe from the evidence that appellee knew that trainmen or brakemen were at times sent out in that condition, he would by continuing in the employment of the appellant assume the risk, although he did not know that such a man was in charge of the switch. This instruction was correctly refused. The doctrine of assumed risk has no application to the case. The appellee did not know that such person was in charge of the particular switch, and his knowledge that at times the appellant negligently sent out on duty brakemen who were in need of rest and sleep could not affect him with knowledge that there was a train side-tracked at that switch, and that the brakeman in charge of the switch was in such condition as to render him unfit for

duty and apt to leave the switch open. It was the duty of the appellant to furnish a safe track, and liability for its negligent failure to do so can not be defeated on the ground that the risk had been assumed because its employes may know that it is sometimes negligent in that respect. If the doctrine of assumption of risk should be applied to the extent contended for by the appellant there could never be any recovery against it for any negligent act, because it is common knowledge that among the thousands of servants charged with the operation of the trains many are sometimes negligent, and that accidents resulting from the negligence of servants do and are liable to happen at any time. The seventh and eighth assignments of error, complaining of the charge of the court and the refusal of requested instruction, are but contentions for the same doctrine of assumption of risk and are overruled.

There was no error in admitting the evidence of the witnesses as shown by the ninth and tenth assignments to have been received over the objection of the appellant. It was proper to show that the brakeman McMurray was in need of rest by the evidence of the witness that she saw him just before he started out on his trip, and that "he looked bad and worried and seemed it was all he could do to walk." The testimony of the witness Malcolm Jones showed not only the physical condition of McMurray, but that the train dispatcher Butler must have known of it. Butler as train dispatcher was charged with the duty of sending out the crews, and the evidence objected to showed that McMurray was present in the office when the witness requested Butler to allow him to lie off and rest. But even if it were not true that the appellant was aware that McMurray was in need of rest and sleep, that fact did not relieve it of its duty to have the track in a safe condition. The doctrine of fellow-servants has no application in this case, and the brakeman was the agent of the company to see that the switch was closed. The judgment will be affirmed.

*Affirmed.*

Writ of error refused.