### SOUTHERN UNDERWRITERS v. DYKES et al.

#### No. 5229.

Court of Civil Appeals of Texas. Amarillo.

Dec. 9, 1940.

1106

Will R. Saunders, of Dallas, and Simpson, Dorenfield & Fullingim, of Amarillo (Henry D. Akin, of Dallas, of counsel), for plaintiff in error.

S. D. Stennis and John V. Osborne, both of Pampa, for defendants in error.

JACKSON, Chief Justice.

This is an appeal by writ of error from a judgment in a compensation suit in which the defendants in error, Mrs. C. S. Dykes individually and as next friend for Betty Joe Estes, a minor, Claudia Dykes, now the wife of Johnnie Cole, Doris Dykes, now the wife of Billie Cornwell, Ona Fay Estes, now the wife of Frank Kirby, whom we will hereafter call appellees, secured an order setting aside an adverse award by the Industrial Accident Board and recovered the sum of $1,932 on a compensation policy issued to the Llano Construction Company by the Southern Underwriters, the plaintiff in error, which we will hereafter designate as appellant.

The appellees are beneficiaries of C. S. Dykes, deceased, under the Workmen's Compensation Act and alleged that on the 13th day of August, 1935, while acting in the course of his employment for the Llano Construction Company, C. S. Dykes received severe internal and external injuries from which he died on March 23, 1937.

The appellant answered by general demurrer, special exceptions and general denial.

The questions on which this appeal is predicated will sufficiently appear from the findings of the jury, the assignments of error and our discussion thereof.

On special issues submitted by the court the jury found in effect that the appellant on August 13, 1935, had an outstanding policy of compensation insurance covering the employees of the Llano Construction Company; that C. S. Dykes sustained personal injuries while assisting in carrying two joints of four-inch pipe, was an employee of the Llano Construction Company, sustained injuries in the course of his employment, which were a procuring cause of his death; that his death was not solely caused by disease nor by an attack of influenza in 1937, was not solely due to pyorrhea, prostatitis, nor a combination of the effects of pyorrhea, prostatitis and influenza; that it was not due solely to heart failure nor solely to natural causes.

On these findings judgment was rendered for appellees and the amount thereof distributed among them and from the judgment this appeal is prosecuted.

The appellant assails as error the action of the trial court in overruling its general demurrer because the petition is insufficient to state a cause of action and the allegation charging that the deceased suffered severe internal and external injuries are but conclusions of the pleader.

The appellees, after stating the date and place of the injury and that the deceased with three other employees was carrying a heavy joint of pipe, allege that the other employees unexpectedly dropped their end of the pipe throwing the entire weight thereof on the deceased, and by this unexpected and accidental event the pipe crushed him to the ground "causing various severe internal and external injuries from which and as a proximate result of which the said C. S. Dykes on the 23rd day of March, 1937, died." There is no other allegation relative to the injuries suffered, no further description or suggestion as to the character, severity, kind or location of the injuries and the appellant under its general demurrer insists that the allegation in the petition is only a conclusion.

■ The contention that the allegation attacked by the demurrer is a conclusion of the pleader is obviously correct.

In Whatley v. Cato Oil Co., Inc., et al., Tex.Civ.App., 115 S.W.2d 1205, 1208, it is said: "There is some confusion in the decisions relative to conclusions which are subject to general exceptions, but the opinion of the Supreme Court in Garza et al. v. Kenedy et al., 299 S.W. 231, 233, contains the latest expression we have found thereon and the rule is said to be: 'In testing the sufficiency of a petition by a general demurrer, much liberality is indulged by the courts, even though much of the pleading is made up of what is generally termed "conclusions of the pleader," drawn from the facts not revealed. Yet, such a defect in pleading can only be reached by special demurrer against that defect and cannot be reached by general demurrer.' This holding is followed in Hanson et al. v. Pratt, Tex.Civ.App., 51 S.W.2d 629; Arkansas Drilling Co. et al. v. Burma Oil & Gas Co. et al., Tex.Civ.App., 68 S.W.2d 336, and Fagan v. Wadel-Connally Hardware Co., Tex.Civ.App., 89 S.W.2d 1080."

■ In view of the holding of the Supreme Court the general demurrer is overruled.

The appellant directs a special exception to the portion of the paragraph of the petition quoted above attacking the allegation that the deceased suffered internal and external injuries from which he died for the reason that such allegation is indefinite, uncertain, failed to state any particular internal injuries or any particular external injuries suffered by the deceased; that the appellant was not advised of the nature or character of any injury or injuries nor what appellees would attempt to prove, and such allegation is only the conclusion of the pleader.

In Texas Employers' Ins. Ass'n v. Downing, Tex.Civ.App., 218 S.W. 112, 115, in an opinion by Judge Boyce, writ of error denied, the insufficiency of the allegation of injuries was considered and decided. The complainant in that case after alleging the other elements of the cause of action stated: "That while dragging a piece of ice, weighing about 300 pounds, down an incline he slipped and fell down such incline, and the piece of ice slid down against him, and so crushed him that he has been totally and permanently disabled." This allegation was attacked by special exceptions because it did not inform the defendant of the character and extent of the injury to any particular part of the claimant's body and the court said: "We think the court should have sustained the special demurrers."

See also Norwich Union Indemnity Co. v. Wilson et al., Tex.Civ.App., 17 S.W.2d 68; Wall et al. v. Royal Indemnity Co., Tex.Civ.App., 299 S.W. 319; Traders & General Ins. Co. v. Marrable, Tex.Civ.App., 126 S.W.2d 746; Bluitt et al. v. Pearson et al., 117 Tex. 467, 7 S.W.2d 524; Baker v. Hahn, Tex.Civ.App., 161 S.W. 443.

In Houston Electric Co. v. McDade, 34 Tex.Civ.App. 497, 79 S.W. 100, writ refused, plaintiff alleged that she had been thrown to the ground violently; that her spine was dislocated, her shoulder and arm, hip and leg bruised and injured, "and, in fact, greatly injuring and wounding plaintiff's entire body, and *injuring plaintiff internally.*" In considering the admissibility of testimony under this allegation of internal injury, the court said: "It is clear that a special exception to the allegation of internal injuries would have required plaintiff to state more definitely what were the internal injuries claimed to have been received by her, and we think it equally clear that the allegation unexcepted to was sufficient to admit proof of injury to her womb."

In Magill et al. v. McCamley, Tex.Civ. App., 182 S.W. 22, 23, writ refused, the court, in passing upon a special exception directed at the pleading because no facts were given upon which the conclusions stated in the allegation were based, held: "It is elementary that an allegation or averment of a legal conclusion, when no facts are stated from which such conclusion can be drawn, is insufficient pleading."

■ The purpose of a special exception is to require the plaintiff to state more fully, clearly and specifically the facts that constitute the cause of action so the court may understand and submit to the jury the issues presented by the pleading and the testimony and the defendant may properly prepare for trial and guard against surprise. The appellees contend that inasmuch as there had been a previous trial of the case the appellant was apprised of the proof to be offered. This assertion is followed by the argument that appellees did not know and could not state more specifically the internal or external injuries. Certainly if appellant was advised by the former trial what the testimony would be, the appellees were informed by the same testimony the particular injuries on which they would rely for a recovery. However, the court judicially knows that the testimony in a second trial frequently varies so much from the facts presented by the testimony on a previous trial that the litigant should not be deprived of the fact allegations upon which the adverse party depends at the second trial. The appellees claim that this proceeding is statutory and the same certainty is not required as is demanded in a common law action; also that the rule is more liberal to beneficiaries seeking to recover for the death of an employee than to the employee in a suit for compensation for injury. The pleading in a compensation suit is construed liberally but the sufficiency of plaintiff's petition in such a suit is largely determined by the general rules of good pleading. 45 Tex.Jur. 802, para. 293.

Article 8306, Section 16 of the Workmen's Compensation Act, Vernon's Annotated Texas Civil Statutes, provides: "In all cases of injury resulting in death, where such injury was sustained in the course of employment, cause of action shall survive."

It is not a separate cause of action which survives but the same cause of action that accrued to the employee survives to the beneficiaries. Texas Employers' Ins. Ass'n v. Morgan et al., Tex.Com.App., 295 S.W. 588.

In 45 Tex.Jur. 804, the author states: "The general rule is that injuries must be specifically alleged and described."

Article 8307, Section 5, Vernon's Annotated Tex.Civil Statutes, among other things, stipulates: "The burden of proof shall be upon the party claiming compensation."

Article 8309 under second subdivision 4 of Section 1, provides that: "Any reference to any employé herein who has been injured shall, when the employé is dead, also include the legal beneficiaries."

In a compensation suit, whether by the injured employee or by the beneficiaries of the deceased employee, the burden is on the employee to plead and prove that he suffered accidental injury or injuries by accidental means in order to recover for incapacity and upon the beneficiaries of the deceased to plead and prove the same facts to recover compensation for the death of the employee.

Under the allegation that the deceased suffered severe internal and external injuries resulting in his death testimony of any injury from a bruise on his toe to a cerebral hemorrhage could be considered. The appellees did not claim in their petition they for any reason were unable to allege more specifically the injuries upon which they relied and in our opinion the special exception of appellant to the general allegation of injuries should have been sustained. The wisdom of this rule is apparent from the submission by the court of Special Issue No. 2, hereafter considered.

The appellant presents as error the action of the trial court in refusing to direct a verdict in its behalf because the evidence, it says, is wholly insufficient to show that the death of C. S. Dykes on March 23, 1937, was caused by any injuries he received on August 13, 1935, or that such injuries had any causal connection with, or were a producing cause of, his death.

There is testimony in the record to the effect that C. S. Dykes on August 13, 1935, was strong, healthy, able-bodied, weighed about 180 pounds, was then, and had for seven or eight years, engaged in manual labor; that on that date while in the course of his employment he, together with three other fellow employees, were carrying on their shoulders two joints of four-inch pipe some forty feet in length, weighing about 700 pounds; that Dykes was in the rear and when they reached the place where the pipe was to be dropped some of the men in front hollered, "Throw it." The other employees threw the pipe off their shoulders but Dykes did not, the front end struck the ground, the rear end remained on the right shoulder of Dykes and the weight of the pipe crushed him to a sitting position; that he was addled, dazed and nauseated, complained of pain, was carried to the office of Dr. Wild, examined, treated and sent to the hospital where he remained until August 18th when he was discharged. Dykes went home, continued to suffer, returned to the hospital, stayed one night, returned home again and stayed in bed for several weeks. He was never able to work after the injury. Some time thereafter he began to lose weight and prior to his death weighed only 135 pounds; that after the accident he suffered with smothering spells; that his right arm was badly swollen for some six weeks after the accident and then began to shrink and he lost the use thereof for all practical purposes and he walked sideways apparently favoring his right side.

Dr. Bruno testified that he examined the deceased on several occasions between the date of his injury and his death and in his opinion he had been injured internally, the result of which caused an aneurism from trauma, exertion and strain sustained in the accident; that an aneurism is an enlarged place in a vein or artery caused by damage thereto; it bulges out when the heart beats and the place becomes weak; that the aneurism was in the sub-clavian artery on the right side and in his opinion was a cause of the death of the deceased. Dr. Wild who examined the deceased on the 13th of August, 1935, the date of the accident, testified that there was no visible external injury upon the body of the deceased on that day or at any time during the several days he kept him in the hospital. Dr. Aronson examined Mr. Dykes on August 30th and testified to no visible injury and said he discovered no internal injury which in his opinion was a producing cause of the death. Dr. Hendricks who examined Mr. Dykes on February 15, 1936 testified to no external in-

juries and gave it as his opinion that the accident resulted in no injury which was a producing cause of the death. Dr. Overton examined the deceased on February 17, 1936, but testified to no visible injury and stated he discovered no injury that in his opinion was a producing cause of the death of C. S. Dykes. Dr. McBribe gave his opinion based on hypothetical questions that the injuries described could not have been a producing cause of the death of Mr. Dykes. The testimony is sharply controverted and the findings of a jury that there was no causal connection between the accident and the death would have found ample support in the testimony. Nevertheless, we do not feel warranted in holding under the law and this record that the appellant was entitled to a directed verdict.

In Texas Employers' Ins. Ass'n v. Humphrey, Tex.Civ.App., 140 S.W.2d 313, writ refused, it is held that in ascertaining whether a fact issue should be withdrawn from the jury all adverse testimony should be discarded and also that the opinion testimony of physicians is only advisory, not conclusive, and may be disregarded by the trier of the facts.

The appellant by proper assignment challenges as erroneous because too unlimited in its scope and allows the jury to consider any and all injuries whether pleaded or proved or not, the submission of the court of Issue No. 2, as follows: "Do you find from the preponderance of the evidence that C. S. Dykes sustained any personal injuries while carrying two joints of four-inch pipe on or about the 13th day of August, 1935?", which the jury answered in the affirmative.

■ In Traders' & General Ins. Co. v. Low, Tex.Civ.App., 74 S.W.2d 122, 123, writ refused, it is held:

"Issues submitted in such general language that permits the jury to find that the appellee sustained injuries which were not alleged, but upon which there is testimony, constitute reversible error. New Amsterdam Casualty Co. v. Rutherford et ux. (Tex.Civ.App.) 26 S.W.(2d) 377.

"It is elementary that a plaintiff can recover only upon the cause of action which he alleges. Ft. Worth & Denver City Ry. Co. v. Jenkins (Tex.Civ.App.) 42 S.W.(2d) 267, and authorities cited. See, also, Safety First Bus Co. v. Skibinski et al. (Tex.Civ.App.) 36 S.W.(2d) 288."

The law as announced in the above case is apparently the settled law of Texas.

Texas Indemnity Ins. Co. v. Pemberton, Tex.Civ.App., 9 S.W.2d 65; Texas Employers' Ins. Ass'n v. Pierson, Tex.Civ. App., 135 S.W.2d 550; Southern Underwriters v. Wright, Tex.Civ.App., 142 S.W. 2d 297.

■ While the court submitted this issue in substantially the language in the petition to which he overruled the special exception, his error in overruling the exception is emphasized by the submission of the issue in such general terms as allowed the introduction of testimony to prove any injury whether internal or external. This assignment is sustained.

The appellant assails as error the action of the trial court in refusing to submit its requested Issue No. 20, which is as follows: "Do you find from a preponderance of the evidence that C. S. Dykes sustained a traumatic aneurism as a natural result of accidental personal injuries, if any, sustained by him on August 13, 1935?"

■ It will be recalled that the only causal connection between an internal injury suffered by deceased by accident and his death is the testimony of Dr. Bruno that he died from a traumatic aneurism occasioned by the accident. This testimony is sharply and affirmatively controverted by the five other physicians and surgeons, two of whom were voluntarily selected by the deceased both to treat him and give testimony in the trial of his case. The only proof that external injuries may have had any causal connection with the death are the inferences to be drawn from the testimony of the lay witnesses and their testimony was sharply and affirmatively contradicted and in our opinion this special issue should have been given.

■ The appellant by a proper assignment complains of the statements made by one of appellees' counsel in opening the argument to the jury for the reason that counsel for appellant was criticised and castigated for failure to produce Dr. Webb in person to testify at the trial or to secure his evidence by deposition. The argument of which complaint is made stated concisely is that the testimony of Mrs. Dykes that deceased had influenza in 1937, was treated by Dr. Webb, that deceased had recovered, and Dr. Webb was the physician called at the time deceased died but did not reach him before death; that the appellant's attorney in cross-examination asked Mrs. Dykes if she had not called Dr.

Webb, that he arrived after the death of the deceased and had she not told the doctor at that time that the deceased died from heart trouble; that the appellant knew where Dr. Webb could be found; that it had secured physicians from Amarillo, Pampa and Oklahoma City and if they thought Dr. Webb would testify that the deceased died from heart trouble why didn't they bring this physician as a witness or have his deposition taken. On objection the court instructed the jury not to consider this argument. There is nothing to indicate that Dr. Webb was an employee of the appellant or that it had any more control over him than did the appellees or under any greater obligation to secure his testimony by attendance or by deposition than did appellees. The cross-examination was legal and proper. The evidence on all material issues is sharply controverted.

In Robbins et al. v. Wynne, Tex.Com. App., 44 S.W.2d 946, 947, the attorney for one of the litigants in his argument used this language: "* * * 'that he, counsel, did not put Mrs. Howard, a sister of defendant's wife, and a niece of the plaintiff, Mrs. Robbins, on the stand because Mrs. Howard had been a recent recipient of the plaintiff, Mrs. Robbins', bounty and that Mrs. Howard had told him, defendant's counsel, that she therefore did not wish to testify in the case.'" When objection was urged to the statements the counsel at once withdrew the remarks, asked the jury not to consider them and also requested the court to instruct the jury not to consider such remarks for any purpose and the court so directed the jury. Commenting on this proceeding, the court says:

"We think the above transaction presents error which must result in a reversal of this case.

* * *

"We do not think the error was of such a character that this court can say with any degree of certainty that counsel's acknowledgment of his error in the presence of the jury, and the court's instruction to disregard it, have rendered the error harmless. In fact, we think that a wrong has been done which was and is fatal to this trial."

The other assignments presenting as error the statement of the same counsel in the opening argument to the jury we deem it unnecessary to discuss.

Notwithstanding the reports abound with opinions admonishing attorneys not to indulge in improper, prejudicial, unwarranted and unjustifiable argument and many judgments are reversed because thereof, the frequency with which lawyers ignore this admonition is to be regretted. Such statements will not be made on another trial and what we have said relative thereto is to again caution attorneys to refrain from allowing their zeal and enthusiasm in argument to the jury to jeopardize the rights of their clients. Service Mutual Ins. Co. v. Blain, Tex.Civ.App., 135 S.W.2d 745; Liberty Mutual Ins. Co. v. McDaniel, Tex.Civ.App., 102 S.W.2d 493; Safeway Stores, Inc. v. Brigance, Tex.Civ.App., 118 S.W.2d 812; Traders & General Ins. Co. v. Crouch, Tex.Civ. App., 113 S.W.2d 650; Indemnity Ins. Co. of North America v. Harris, Tex.Civ. App., 53 S.W.2d 631; Morgan v. Maunders, Tex.Civ.App., 37 S.W.2d 791; San Antonio Public Service Co. v. Smith, Tex. Civ.App., 57 S.W.2d 179; Lottman v. Cuilla, Tex.Com.App., 288 S.W. 123; Robbins v. Wynne, supra; Woodard v. Texas & P. Ry. Co., 126 Tex. 30, 86 S.W.2d 38; Texas Ind. Ins. Co. v. McCurry, Tex.Com.App., 41 S.W.2d 215, 78 A.L.R. 760.

The other assignments of appellant, in our opinion, do not present reversible error.

The judgment is reversed and the cause remanded.